JUSTICE NELSON
concurs and dissents.
¶42 I concur in the Court’s Opinion as to the issues on appeal; however, I dissent from the trial court’s decision to deny the Walkers punitive damages. I would remand for further proceedings to determine, award, and enter judgment for punitive damages. I write separately on that point.
¶43 The trial court dismissed the Walkers’ claim for punitive damages from the bench without briefing or argument on the ground that the Walkers failed to prove malice. Opinion, ¶ 37. Walkers were, at the very minimum, entitled to brief and argue this contested issue. That aside, actual malice-for punitive damages purposes-is defined by § 27-1-221(2), MCA, and must be proven by clear and convincing evidence, § 27-1-221(5), MCA. Opinion, ¶ 38. Based on the facts of this case, Opinion, ¶¶ 12-17, 25,1 conclude that the Walkers clearly and convincingly met their burden to prove malice under § 27-l-221(2)(a) and (b), MCA. Johnson engaged in tortious conduct which interfered with and attempted to cause Emmerson to breach her contract with the Walkers.
¶44 We have affirmed the award of punitive damages (and damages for emotional distress) in a case involving the tortious interference with the plaintiffs’ right to purchase a parcel of land. Maloney v. Home and Investment Center, Inc., 2000 MT 34, ¶¶ 72, 77, 298 Mont. 213, 994 P.2d 1124. Accordingly, there is ample legal authority for the Walkers’ claim for punitive damages here.
¶45 Factually, as set out in the Court’s Opinion, Johnson, a wealthy, self-styled “very sophisticated investor,” determined to purchase the property that Emmerson had lawfully contracted to exchange with the Walkers. Over a period of months, Johnson single-mindedly orchestrated a series of acts pointedly calculated to defeat the Emmerson/Walker contract-while keeping his nefarious activities from the Walkers.
¶46 The District Court found that Johnson enticed Emmerson to *180 ignore her contract with the Walkers by making offers to Emmerson for more money than the Emmerson/Walker contract; by entering into an exchange agreement with Emmerson; by funding and directing Emmerson to file a complaint against the Walkers to invalidate the exchange agreement; by providing legal opinions to Emmerson’s lawyer on how to invalidate the Emmerson/Walker agreement; by recommending lawyers to Emmerson so to pursue a complaint against the Walkers-after Emmerson’s lawyer maintained that the agreement was valid; and, ultimately, by making his own lawyer available to Emmerson to file the instant suit and by paying the attorneys’ fees and costs of the litigation.[1] Johnson threatened the Walkers with meritless claims and counterclaims,[2] implied that the Walkers had violated his medical privacy, intimidated them, and deliberately used Montana’s legal system to beat the Walkers down, to frustrate their contract with Emmerson, and to cause them expense and emotional distress.
¶47 In all likelihood, Johnson and his trial counsel violated Montana’s champerty statutes, §§ 37-61-408 and -411, MCA, by encouraging, funding, and prosecuting this lawsuit in Emmerson’s name against the Walkers.
¶48 Accordingly, there is ample clear and convincing factual evidence in the record here that Johnson acted with malice as defined in § 27-1-221(2)(a) and (b), MCA. Indeed, Johnson and his counsel engaged in the same sort of “legal thuggery” that we condemned in Seltzer v. Morton, 2007 MT 62, ¶ 180, 336 Mont. 225, 154 P.3d 561. In that case, we affirmed awards of $100,000 in punitive damages against Morton and $9.9 million in punitive damages against Morton’s counsel, Gibson, Dunn & Crutcher (GDC). Seltzer, ¶¶ 1, 12. Like Morton and GDC in Seltzer, Johnson’s impositions on the Walkers, both out of court and in, were little more than a rich-man’s game to bully, brow-beat and buy what he wanted at any cost, and to misuse Montana’s courts in doing so. For Johnson to now come before this Court and attempt to cloak his outrageous conduct in the mantel of the Article II, Section 16, right of access to the courts, Opinion ¶ 26, is a disgrace to Montana’s Constitution.
¶49 Among other things in Seltzer, we observed:
*181 The “essence” of our judicial system is not simply the resolution of disputes; rather, it is the resolution of legitimate disputes. Baseless lawsuits prosecuted in furtherance of ulterior motives have no place in our courts. Moreover, the sort of saber-rattling, chest-thumping approach typified by the comment of GDC’s counsel, trivializes the devastating effects on the health, reputations, and fortunes of the real people who are maliciously and abusively sued. For the ordinary citizens who are the victims of such a lawsuit, it may be the most horrific experience of their lives. Indeed, those effects are not merely the collateral damage of some run-of-the-mill litigation battle between attorneys. Rather, the defendants in such cases are the innocent casualties of the war.
Seltzer, ¶ 179. Ironically, Dr. Walker avoided being a casualty of the war in Iraq, Opinion, ¶ 8, only to become collateral damage in Johnson’s legal wars in Montana.
¶50 Johnson’s conduct, and that of his trial attorney in this case, was reprehensible and repugnant to Montana’s notions of fairness and justice. In my view, Johnson caught an undeserved windfall in the court’s determination not to award substantial punitive damages against him. Were I the trial judge, Johnson would be leaving Montana for California on a bus with but the shirt on his back.
¶51 I concur and dissent.

 1 note that Emmerson’s lawyer on appeal, Karl Knuchel, was Johnson’s lawyer in the trial court when Johnson was involved in his chicanery. Johnson is represented by different counsel in this appeal.

 For example, Johnson threatened the Walkers with claims for the rental of a private jet aircraft to attend the trial-to the tune of between $58,000 and $145,000.